UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

GUNDERSON LLC, an Oregon company,

                    Plaintiff,

   v.

BCG PROPERTIES GROUP, INC., f/k/a
BRADLEY COATINGS GROUP INC., a
Pennsylvania company,

                    Defendant.

Case No.  3:19-cv-01569-AC

OPINION AND ORDER

---

ACOSTA, Magistrate Judge:

*Introduction*

     Plaintiff Gunderson LLC ("Gunderson") sues Defendant BCG Properties Group, Inc.

("Bradley") alleging breach of express warranty, breach of contract, and breach of the implied

covenant of good faith and fair dealing.[1]  (Compl. at ¶¶ 40–64, ECF No. 1.)  Bradley moves to

---

[1] The court finds that oral argument would not be helpful to resolution of the issues; any request
for oral argument is denied.  LR 7-1(d)(1).

dismiss Gunderson's second claim for breach of contract and moves to dismiss or strike Gunderson's third claim for breach of the implied covenant of good faith and fair dealing. (Def.'s Mot., ECF No. 7.) Bradley's Rule 12(f) Motion to Strike and Rule 12(b)(6) Motion to Dismiss ("Motion") (ECF No. 7) are now before the court, and the court denies the motions.

*Factual Background*

Gunderson builds and sells railcars. (Compl. at ¶ 4.) Bradley manufactures and sells paint. (*Id.* ¶ 5.) Bradley sold Gunderson 221,075 gallons of paint called "BCG 1555T Gray Acrylic DTM Enamel" ("BCG 1555T") for use on the exterior of 5,656 hopper railcars between approximately May 2012 and December 2016. (*Id.* ¶¶ 1, 9.)

In connection with the sale, the parties signed a contract titled "Limited Warranty Between Bradley Coatings Group and Gunderson, Inc." ("Warranty"). (*Id.* ¶¶ 1, 10.) The Warranty covered all BCG 1555T paint that Gunderson bought from Bradley, and read in relevant part as follows: "When the product listed herein is applied *according* to the Bradley Coatings Group Technical Data Sheet, the coating applied shall withstand the effects of normal use and will adhere to the properly prepared substrate for a period of **five (5) years** from the date of application." (Def.s Mot. Dismiss Ex. 1 at 1, ECF No. 7-1) (all emphasis in original). The Data Sheet recommends, among other things, that the BCG 1555T paint be applied to a "Wet Film Thickness" ("WFT") of 8 – 12 millimeters and a Dry Film Thickness ("DFT") of 3 ± 0.5 millimeters. (*Id.* Ex. 2 at 1, ECF No. 7-2.)

In the event that BCG 1555T "delaminate[d]" or became subject to "excessive corrosion" before five years from the date of application, Bradley warranted it would "provide enough products and labor to Gunderson, Inc. necessary to repair the material," in accordance with a

schedule by which Bradley agreed to provide a certain percent of all needed material at no charge based on the numbers of years within application that the product failed. (Compl. ¶ 12.) Bradley also agreed to provide labor on a similar pro-rated scale. (*Id.* ¶ 13.)

Bradley's representatives supervised Gunderson's painting process to ensure that Gunderson's work conformed to Bradley's instructions and the Bradley Coatings Group Technical Data Sheet ("Data Sheet"). (*Id.* ¶ 17.) Gunderson followed all instructions given by Bradley's representatives. (*Id.* ¶¶ 17.) Bradley's representatives inspected the paint application on a number of sample railcars. (*Id.* ¶¶ 18–28.) The dry film thickness on the sample cars inspected ranged from 4.0 to 12.1 millimeters. (*Id.*) Bradley's representatives issued Specialty Supplier Certifications (collectively "Certifications") that stated Gunderson had painted the sample railcars in accordance with Bradley's recommended practices, the paint was operating to Bradley's satisfaction, and the representative had reviewed the application and workmanship for his company. (*Id.*)

Over time, Gunderson discovered Bradley's paint began to fail by lifting, blistering, bubbling, and flaking on the railcars to which it was applied. (*Id.* ¶¶ 2, 30.) One of the railcars with paint problems had been inspected by one of Bradley's representatives, who did not raise any concerns about the paint thickness at the time he signed the Specialty Supplier Certification. (*Id.* ¶ 31.) The paint thickness on that car and others on which the paint failed was about 7.5 to 8 millimeters. (*Id.* ¶¶ 31–32.)

In August 2017, within the five-year period under the Warranty, Gunderson notified Bradley of the paint failures. (*Id.* ¶ 33.) Gunderson and Bradley began investigating the cause of the paint problems. (*Id.* ¶ 34.) Gunderson concluded the paint failed due to paint defects,

including the paint's vulnerability to ultraviolet light that likely resulted from an incorrect mixture of ingredients when Bradley manufactured the paint. (*Id.*) However, Gunderson "could not examine any significant quantity of the original paint" as part of its investigation because Bradley did not retain a sample of the original paint, contrary to industry practice, and Bradley had modified its paint formula since the sale to Gunderson. (*Id.*) Bradley concluded that the paint failure was the result of improper application, including excessively thick application of the paint outside the specifications in the Data Sheet. (*Id.* ¶ 36.) Bradley therefore claimed the Warranty did not cover any of the defects. (*Id.*) Accordingly, Bradley has not paid for materials or labor to remedy the paint failure. (*Id.* ¶ 38.)

Gunderson now sues Bradley for failing to honor its obligations under the Warranty. (*Id.* ¶¶ 40–64.)

## *Preliminary Procedural Matters*

As part of Bradley's Motion, Bradley asks the court to consider materials outside of the pleadings in support of its motion. (Def.'s Mot. at 7–8.) Generally, a court may not consider material beyond the complaint when deciding a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion. FED. R. CIV. P. 12(d) (explaining that if court considers other materials, the motion is converted into a motion for summary judgment under Rule 56); *see Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam)). However, a court may consider materials beyond the pleadings under two exceptions, without converting the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment: judicial notice and incorporation by reference. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (discussing

that a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment). Judicial notice under Federal Rule of Evidence 201 permits a court to take judicial notice of undisputed facts in matters of public record. *Khoja*, 899 F.3d at 999.

In contrast to judicial notice, the incorporation by reference doctrine "is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* This doctrine is designed to prevent plaintiffs from selectively referencing portions of documents that support their claims, while omitting portions of those documents that weaken "or doom" their claims. *Id.* The Ninth Circuit has extended this doctrine to consider evidence on which the complaint "necessarily relies" if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The Ninth Circuit urges courts to use caution when drawing any inferences from documents incorporated by reference on a motion to dismiss. *Khoja*, 899 F.3d at 1003 (noting that the incorporation by reference doctrine is designed to prevent artful pleading by plaintiffs, "the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim.").

The materials Bradley has submitted in support of its motion are properly before the court. The Warranty and the Data Sheet are not outside of the pleadings because Gunderson's Complaint specifically refers to and necessarily relies on them, and neither party challenges their authenticity. Accordingly, the court finds it appropriate to consider the Warranty and the Data Sheet under the incorporation by reference doctrine.

*Legal Standards*

I.   <u>Motion to Dismiss for Failure to State a Claim</u>

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).   A court may dismiss "'based on the lack of cognizable legal theory or the absence of sufficient facts alleged'" under a cognizable legal theory.   *UMG Recordings, Inc. v. Shelter Capital Partners LLC,* 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also CallerID4u, Inc. v. MCI Commc'ns Servs. Inc.,* 880 F.3d 1048, 1061 (9th Cir. 2018).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Teixeira v. Cty. of Alameda,* 873 F.3d 670, 678 (9th Cir. 2017).   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.   *Twombly,* 550 U.S. at 556.   When a plaintiff's complaint pleads facts that are "merely consistent with" a defendant's liability, the plaintiff's complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'"   *Id.* at 557 (brackets omitted).

The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff.   *Teixeira,* 873 F.3d at 678; *see also Iqbal,* 556 U.S. at 679; *Snyder & Assocs. Acquisitions LLC v. United States,* 859 F.3d 1152, 1157 (9th Cir. 2017).   Rule 8 requires that complaints in federal court consist of "a short and plain statement of the claim showing that the

pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(2). The pleading standard under Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555); *see also* FED. R. CIV. P. 8(a) (2). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly,* 550 U.S. at 555. However, a claim "may proceed even if it strikes a savvy judge that actual proof of [necessary] facts is improbable," and the plaintiff is unlikely to succeed on the merits. *Id.* at 556.

II.    <u>Motion to Strike</u>

Pursuant to Rule 12(f), the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f); *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010). A matter is redundant if it is superfluous and can be omitted without a loss of meaning. *See Wilkerson v. Butler,* 229 F.R.D. 166, 170 (E.D. Cal. 2005) (noting that a redundant matter is one that constitutes "needless repetition"); *Orff v. City of Imperial,* No. 17-CV-0116W (AGS), 2017 WL 2537250, at *3 (S.D. Cal. June 12, 2017) ("Redundant matter is the needless repetition of assertions."). "Courts will strike a claim as redundant when it essentially repeats another claim in the same complaint." *Lamke v. Sunstate Equip. Co., LLC*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004) (quoting 2-12 MOORE'S FED. PRACTICE § 12.37[3]) (internal quotation marks omitted).

"The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy,* 984 F.2d 1524, 1527 (9th Cir. 1993) , *rev'd on other grounds,* 510 U.S. 517 (1994) (internal quotation marks, citation, and first alteration omitted). "Motions to strike are generally viewed

with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *Travelers Cas. and Sur. Co. of America v. Dunmore*, No. CIV. S-07-2493 LKK/DAD, 2010 WL 5200940, at *4 (E.D. Cal. Dec. 15, 2010). Thus, "granting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Id.* (citing *Fantasy*, 984 F.2d at 1527–28).

Prejudice to the moving party may include, for example, conducting expensive, and potentially unnecessary and irrelevant, discovery. *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010). Courts frequently deny motions to strike where the moving party cannot adequately demonstrate such prejudice, "even though the offending matter literally [was] within one or more of the categories set forth in Rule 12(f)." *New York City Employees' Retirement System v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) (quoting *Rivers v. Cty. of Marin*, No. C 05-4251, 2006 WL 581096, at *2 (N.D. Cal. Mar. 7, 2006)) (internal quotation marks omitted).

When ruling on a motion to strike, the court must accept the nonmoving party's allegations as true and liberally construe the complaint in the light most favorable to the nonmoving party. *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010). Whether to grant a motion to strike is within the sound discretion of the district court. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 963 (9th Cir. 2018).

////

////

////

*Discussion*

I.    Bradley's Motion to Strike Gunderson's Breach of Contract Claim

In Gunderson's second claim for relief, Gunderson sues Bradley for breach of contract. (Compl. at ¶¶ 49–57.)   Bradley argues Gunderson's breach of contract claim is redundant of Gunderson's claim for breach of warranty and moves to strike that claim under Rule 12(f).   (Def.'s Mot. at 9.)   Bradley contends Gunderson's claims for breach of warranty (first claim) and breach of contract (second claim) allege the same theory and thus are duplicative.   (*Id.*)   Gunderson responds that the two claims are not duplicative because each claim requires different elements and measures of damages, and relies on different factual allegations.   (Pl.'s Resp. at 11.) Moreover, Gunderson argues it is permitted to plead claims in the alternative at this stage, and further, Bradley has not shown prejudice.   (*Id.*)

*A.    Standards*

A matter is redundant if it is superfluous and can be omitted without a loss of meaning. *See Wilkerson,* 229 F.R.D. at 170 (noting that a redundant matter is one that constitutes "needless repetition"); *Orff,* 2017 WL 2537250, at *3 ("Redundant matter is the needless repetition of assertions.").   "Courts will strike a claim as redundant when it essentially repeats another claim in the same complaint."   *Lamke,* 387 F. Supp. 2d at 1047 (quoting 2-12 MOORE'S FED. PRACTICE § 12.37[3]) (internal quotation marks omitted).

Even if two claims are similar in nature, if the elements are not identical, the claims are not redundant.   *Everett H. v. Dry Creek Joint Elementary School Dist.*, 5 F. Supp. 3d 1167, 1179–80 (E.D. Cal. 2014).   And, the potential for overlap in damages between claims is not fatal.   *Byrd v. Masonite Corp.*, 215 F. Supp. 3d 859, 864 (C.D. Cal. 2016).

Further, a party may set out two or more statements of a claim alternatively, either in a single count or in separate ones. FED. R. CIV. P. 8(d)(2). If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient. *Id.* "Some courts have noted the distinction between redundant pleading and alternative pleading in denying Rule 12(f) motions, holding that a party may plead different theories of a claim when factual or legal issues differ, or when different relief would be available." WRIGHT & MILLER, 5C FED. PRAC. & PROC. CIV. § 1382 (3d ed.) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Essex Ins. Co.*, Civil Action No. 13-32, 2013 WL 6328792, *3 (W.D. Pa. 2013)).

As stated above, "[m]otions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *Dunmore*, 2010 WL 5200940, at *4. Prejudice may include, for example, conducting expensive and potentially unnecessary and irrelevant discovery. *Barnes*, 718 F. Supp. 2d at 1173. Courts frequently deny motions to strike where the moving party cannot adequately demonstrate such prejudice, "even though the offending matter literally [was] within one or more of the categories set forth in Rule 12(f)." *Berry*, 667 F. Supp. 2d at 1128 (quoting *Rivers*, 2006 WL 581096, at *2) (internal quotation marks omitted).

*B.     Analysis*

The court examines whether the elements of a breach of warranty claim are the same as the elements for a breach of contract claim and whether the damages for each claim are measured equivalently in Oregon. ""The elements of a cause of action for breach of warranty are: (1) a warranty; (2) breach of that warranty; (3) notice to the warrantor of the breach; and (4) damages proximately caused by the breach." *CHMM, LLC v. Freeman Marine Equipment, Inc.,* No 3:12-

CV-01484-ST, 2013 WL 3025137 (D. Or. June 14, 2013) (quoting *Wagner Tractor, Inc. v. Shields,* 381 F.2d 441, 443–44 (9th Cir1967)). "There are two prerequisites to a claim for breach of an express warranty. First, there must be an affirmation of fact or description of the goods by the seller. Second, that factual affirmation or description must be the 'basis of the bargain.'" *Larrison v. Moving Floors, Inc.,* 127 Or. App. 720, 724 (1994). In general, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted[.]" OR. REV. STAT. § 72.7140(2). Only a buyer who has accepted goods and not revoked acceptance may recover damages for a breach of warranty, "because damages for breach of warranty are designed to compensate for the diminished value of retained goods[.]" *Kelly v. Olinger Travel Homes, Inc.,* 200 Or. App. 635, 643-44 (2005).

"To establish a breach of contract claim under Oregon law, a plaintiff must show: (1) the existence of a contract; (2) its relevant terms; (3) the plaintiff's full performance and lack of breach; and (4) the defendant's breach resulting in damage to the plaintiff." *Slusher v. Ditech Financial, LLC,* No. 3:18-cv-00034-HZ, 2018 WL 4705547, at *3 (D. Or. 2018) (citing *Schmelzer v. Wells Fargo Home Mortg.,* No. 3:10-cv-1445-HZ, 2011 WL 5873058, at *4 (D. Or. Nov. 21, 2011)) (citation omitted). Damages for breach of contract are the sum that will put the plaintiff in as good a position as if the contract had been performed fully. *Montara Owners Ass'n v. La Noue Development, LLC,* 357 Or. 333, 346 (2015). A buyer may recover for breach of contract even if the buyer rejects or revokes acceptance of the goods. OR. REV. STAT. § 72.110.

The elements required to prove a claim for breach of warranty and a claim for breach of contract, though similar, are not identical. Unlike a breach of contract claim, Gunderson's

performance is not one of the elements of a breach of warranty claim. Further, notice to Bradley is required for a breach of warranty claim, but not for a breach of contract claim. Moreover, the measure of damages for each claim is based on a different standard. Therefore, Gunderson's first and second claim for relief are not redundant.

Bradley insists that Gunderson's first and second claims are redundant because claims for breach of warranty "derive[] from, and [are] measured by, the terms of that warranty" and "[a] plaintiff seeking to recover under an express warranty must comply with the conditions precedent set forth in the warranty." (Def.'s Resp. at 5, ECF No. 16.) The court disagrees that this renders these two claims redundant under Rule 12(f). A claim is redundant if it essentially repeats another claim in the same complaint. *Lamke* 387 F. Supp. 2d at 1047 (quoting 2-12 MOORE'S FED. PRACTICE § 12.37[3]) (internal quotation marks omitted). Here, the requirement that Gunderson comply with the terms of the warranty before bringing a claim for breach of warranty may be a prerequisite, but ultimately, Gunderson must prove different elements and different measures of damages. Moreover, Gunderson brings an estoppel argument under its second claim, but not its first. (Compl. at ¶ 57.)

Further, under Rule 8, at this stage Gunderson may plead the first and second claim in the alternative in separate counts. Even if Gunderson's factual allegations for the two claims overlap, the legal issues differ, as do the measure of damages available.

Finally, Bradley has not attempted to demonstrate prejudice. As Bradley implicitly acknowledges, the factual allegations supporting the breach of contract and breach of warranty claims are similar. (Def.'s Resp. at 5–6.) Therefore, the court concludes that Bradley will not

be prejudiced by conducting expensive, unnecessary, or irrelevant discovery. *See Barnes*, 718 F. Supp. 2d at 1173.

In short, Bradley's motion to strike Gunderson's breach of contract claim as redundant is denied.

II.  Bradley's Motion to Dismiss or Alternatively Strike Gunderson's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

*A.  Implied Covenant Standards*

"The covenant of good faith and fair dealing is an implied covenant that both parties will refrain from any act that would "have the effect of destroying or injuring the right of the other party to receive the fruits of the contract [.]" *Iron Horse Eng'g Co., Inc. v. Nw. Rubber Extruders, Inc.*, 193 Or. App. 402, 419–420 (2004) (quoting *Perkins v. Standard Oil Co.*, 235 Or. 7, 16 (1963) (*en banc*)) (internal quotation marks omitted). "Under Oregon law, there is a duty of good faith and fair dealing with respect to all contracts to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates the reasonable contractual expectations of the parties." *Slusher*, 2018 WL 4705547, at *6 (quoting *Veloz v. Foremost Ins. Co. Grand Rapids, Michigan*, 306 F. Supp. 3d 1271, 1280 (D. Or. 2018), and *Swenson v. Legacy Health* Sys., 169 Or. App. 546, 554-55 (2000)) (internal quotation marks omitted). "[S]o long as it is not inconsistent with the express terms of a contract, the duty of good faith and fair dealing is a contractual term that is implied by law into *every* contract." *Schmelzer v. Wells Fargo Home Mortg.* No. CV-3:10-cv-1445-HZ, 2011 WL 5873058, at *7 (D. Or. 2011) (quoting *Eggiman v. Mid–Century Ins. Co.*, 134 Or. App. 381, 386 (1995) (internal quotation omitted) (emphasis in original). "The duty 'cannot contradict an express contractual term, nor does it provide a remedy for an unpleasantly motivated act that is

Page 13 – OPINION AND ORDER

permitted expressly by the contract.'" *Schmelzer*, 2018 WL 5873058, at *7 (citing *Stevens v. Foren*, 154 Or. App. 52, 58 (1998)).

### B.    *Bradley's Motion to Dismiss*

Bradley moves to dismiss Gunderson's third claim for relief on two grounds:  First, Bradley argues the court should dismiss Gunderson's third claim because it is inconsistent with the express terms of the Warranty.  (Def.'s Mot. at 10.)   Second, Bradley argues the court should dismiss Gunderson's third claim because Gunderson's expectations were not reasonable, and Gunderson was not deprived of any benefit of the express warranty.  (*Id.* at 11.)   In the alternative, Bradley moves to strike Gunderson's third claim as redundant.  (*Id.* at 13.)   Gunderson responds that its implied covenant claim does not contradict the express terms of the contract.  (Pl.'s Resp. at 16.)   Further, Gunderson argues whether its expectations were reasonable is a fact question for the jury.  (*Id.*)

#### 1.    Gunderson's implied covenant claim is not inconsistent with the express terms of the contract

Bradley argues "the Warranty contains express terms requiring compliance with the Data Sheet" and that "[c]onsequently, Gunderson cannot assert an implied covenant of good faith and fair dealing claim that simply contradicts the Data Sheet."  (Def.'s Mot. at 10.)   Bradley contends "Gunderson's alleged reliance on the Certifications contradicts the Data Sheet," therefore the court should dismiss Gunderson's implied covenant claim for failing to state a claim under Rule 12(b)(6).  (Def.'s Mot. at 10.)

Gunderson argues that although the Data Sheet's "recommended" thickness levels may have differed from those approved by Bradley's employees who oversaw the painting, Gunderson reasonably expected Bradley to help it meet its Technical Data Sheet requirements, and Bradley

Page 14  – OPINION AND ORDER

breached that expectation by refusing to honor the five-year warranty and blaming Gunderson's paint application. (*Id.*) Further, Gunderson argues Bradley breached the implied covenant when it failed to retain a paint sample, as is standard practice in the paint manufacturing industry. (*Id.* at 18, 19.) Consequently, Gunderson argues, none of its allegations in support of its breach of implied covenant claim contradicts the contract's express terms. (*Id.* at 17–18.)

The implied covenant of good faith and fair dealing cannot contradict the express terms of the contract. *Schmelzer*, 2018 WL 5873058, at *7 (citing *Stevens,* 154 Or. App. at 58). "[A]ny implied covenant of good faith and fair dealing must be consistent with the terms of a contract[.]" *Richardson v. Guardian Life Ins. Co. of America*, 161 Or. App. 615, 624 (1999).

Further, the duty of good faith and fair dealing involves industry standards and practices. The duty of good faith and fair dealing "is to be applied in a manner that will effectuate the reasonable contractual expectations of the parties." *Iron Horse Eng'g Co., Inc.*, 193 Or. App. at 421 (quoting *Uptown Heights Assocs. v. Seafirst Corp.,* 320 Or. 638, 645 (1995)) (internal quotation marks omitted). When holding the parties to industry standards and practices effectuates the reasonable contractual expectations of the parties, the duty of good faith and fair dealing involves those industry standards and practices that attach to agreements entered into by the parties. *Id.* at 419–420.

As alleged, Gunderson's third claim for breach of the implied covenant of good faith and fair dealing does not contradict the express terms of the contract. Gunderson does not allege Bradley's representatives' supervising, approving, or issuing the Certifications arose from any express term in the contract. (*See* Compl. at ¶¶ 58–64.) Indeed, Gunderson argues "[a] party can breach its implied duty without also violating the express terms of a contract." (Pl.'s Resp. at 17.)

A party breaches the implied covenant when it acts in a way that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Klamath Off-Project Water Users, Inc.*, 237 Or. App. 434, 445 (2010). Gunderson has pleaded a plausible claim that Bradley supervised and approved the paint application and issued the Certifications in a manner that injured Gunderson's right to receive the benefits of the Warranty. These allegations do not contradict the express terms of the Warranty.

2.    Gunderson's expectations were reasonable

Bradley argues that neither Gunderson's alleged expectations nor its alleged reliance on the Certifications was reasonable. (Def.'s Mot. at 11.) According to Bradley, Gunderson has not alleged that Bradley's instructions for Gunderson's paint application "at any time varied or contradicted the recommendations in the Data Sheet," and submits that the Certifications are not Bradley documents, but rather are pre-printed Gunderson forms. Additionally, Bradley argues that Gunderson has not alleged that any Bradley representative actually observed a sample car being painted, and that the Certifications do not reference the WFT or the DFT of the paint on the sample railcars. Thus, Bradley argues, the Certifications could not create a "reasonable expectation" necessary to support a claim for breach of the implied covenant of good faith and fair dealing. (*Id.* at 11–12.) Bradley also argues "the only 'benefit' Gunderson says it was deprived of was the ability to test the paint it applied for defects several years after it purchased the paint from Bradly." (*Id.* at 12.) Bradley maintains that Gunderson purchased 221,075 gallons of paint and had "sole control and possession" of the paint it applied to the railcars, and thus Gunderson "fully received that benefit, and could have kept as many samples as it liked." (*Id.* at 12–13.)

Gunderson argues it has sufficiently pleaded its breach of the implied covenant claim, and whether a party has conformed to objectively reasonable expectations is a question of fact. (Pl.'s Resp. at 18.) Gunderson states that it reasonably expected Bradley "to supervise the railcar painting in a way that ensured Gunderson complied with the Technical Data Sheet" and that Gunderson reasonably expected Bradley "to retain paint samples that would allow Gunderson to determine if the paint used on the railcars was defective" and that Bradley "breached these expectations by claiming that the paint application, which it supervised and approved, was to blame for the paint failure and throwing out evidence that would prove otherwise." (*Id.* at 18–19.) Gunderson argues whether Gunderson's expectations were reasonable and whether Bradley breached them are questions of fact that only a jury can resolve. (*Id.* at 19.)

The duty of good faith and fair dealing "is to be applied in a manner that will effectuate the reasonable contractual expectations of the parties." *Iron Horse Eng'g Co., Inc.*, 193 Or. App. at 421 (quoting *Uptown Heights Assocs.,* 320 Or. at 645) (internal quotation marks omitted). "The duty does not operate in a vacuum, rather it focuses on the agreed common purpose and the justified expectations of the parties, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract." *Klamath Off-Project Water Users, Inc.*, 237 Or. App. at 445 (quoting *OUS v. OPEU,* 185 Or. App. 506, 515–16 (2002)). "Whether a party has breached the covenant of good faith and fair dealing is a question of fact." *Best v. U.S. Nat. Bank of Oregon*, 78 Or. App. 1, 13 (1986). As stated above, matters that the contract does not expressly cover may be sufficiently pleaded by alleging industry standards that effectuate a potentially reasonable contractual expectation. *Hansen v.*

*Gov't Employees Ins. Co.*, 771 Fed. Appx. 385, 386–87 (9th Cir. 2019); *see also Iron Horse Eng'g Co., Inc.*, 193 Or. App. at 419–420.

Gunderson here has sufficiently pleaded that its expectations were reasonable to state a claim for breach of the implied covenant of good faith and fair dealing. The Warranty provides coverage when the product listed is applied according to the Data Sheet. (Compl. ¶ 11; Warranty at 1, 3.) Gunderson alleges Bradley "supervised the painting, which Gunderson performed. Bradley inspected a number of sample railcars, approved the painting of those sample railcars, and issued Specialty Supplier Certifications that stated Gunderson had painted the sample railcars in accordance with Bradley's recommended practices." (*Id.* ¶ 1.) Specifically, Gunderson alleges "[w]hile Gunderson painted the railcars, Bradley representatives supervised the process. Bradley's representatives supervised Gunderson to ensure that Gunderson's surface preparation and paint application conformed to Bradley's instructions and the Bradley Coatings Group Technical Data Sheet. Gunderson followed all instructions given by the Bradley representatives." (*Id.* ¶ 17.) Gunderson's alleged reasonable expectations focus on the "agreed common purpose and justified expectations of the parties" as they are manifested in the express provisions of the contract – applying the paint "*according* to" the Data Sheet. (Warranty at 1, 3.) *See Klamath Off-Project Water Users, Inc.*, 237 Or. App. at 445 (quoting *OUS v. OPEU,* 185 Or. App. at 515–16).

Bradley argues that Gunderson never specified how Bradley supervised or instructed Gunderson to ensure compliance with the Data Sheet. (Def.'s Mot. at 11.) Further, Bradley argues Gunderson never alleged that Bradley's "instructions" varied or contradicted the recommendations of the Data Sheet, and never alleged any Bradley representative "actually

observed a single sample car being painted." (*Id.*) However, Rule 8 does not require detailed factual allegations, and the plausibility standard under Rule 12(b)(6) is satisfied when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Gunderson alleges Bradley "supervised," "inspected," and "approved" painting of the sample railcars. (Compl. ¶ 1.) Under Rule 8's liberal pleading standard, this is sufficient.

Moreover, Gunderson attaches as exhibits to its Complaint the Certifications specific to each sample railcar. (ECF. No. 1.1.) Bradley argues that the Certifications are pre-printed forms from Gunderson that "say nothing about the WFT or the DFT of the paint on the sample railcars," making them not within the parties' reasonable expectations as determined by the Warranty. (*Id.*) Whether the Certifications are Gunderson's forms or not, each Certification reads: "This equipment has been applied in accordance with our recommended practices, and is operating to our satisfaction. I have reviewed the application and workmanship for our company," followed by a Bradley's representative's signature. (ECF No. 1-1.) The Certifications also include the date of each inspection, the number of the car inspected, and the name and title of the inspecting representative. (*Id.*) Based on these allegations, Gunderson has sufficiently pleaded that its expectations were reasonable and that Bradley would "supervise the application of BCG 1555T . . . in a reasonable manner and alert Gunderson if there were any issues that would prevent Bradley from honoring the Warranty." (*Id.*)

Finally, neither the Warranty nor the Data Sheet expressly described the procedure by which either party would investigate the cause of any claimed paint failure. (*See* Warranty at 3) (notification clause outlining documentation required as a claim in writing, "a copy of the job

sheet, photographs, original purchase order, batch number of the product and manufacturer's description of the product applied," and outlining the notification procedure as follows: "Gunderson, Inc. shall contact Bradley Coatings Group to investigate the claim, and no work is to be completed by Gunderson, Inc. on the claim until approved by Bradley Coatings Group. Bradley Coatings Group shall respond to Gunderson, Inc. within 48 hours of notification to investigate the claim.") (*see also* Data Sheet at 2) ("Bradley Coatings Group warrants that all products listed in this data sheet conform to its Quality Standards Statement, and is only obligated to replace its products if determined by Bradley Coatings Group to be defective.") Gunderson alleges it complied with "the notification procedures set out in the Warranty" and that after such notification, it could not "examine any significant quantity of the original paint because Bradley modified the paint formula in January 2015" and "failed to keep a 'retained' sample of the original paint" as is "standard practice in the painting industry" when manufacturers "alter a paint formula." (Compl. ¶¶ 33-34.) Bradley argues it "could do nothing and did nothing to prevent Gunderson from retaining samples of the exact formulations of the paint it actually used to paint the railcars, lot by lot." (Def.'s Mot. at 12–13.) However, in the absence of express language on how the parties would investigate a claim, Gunderson has sufficiently pleaded that the industry standards and practices – retaining a paint sample when the manufacturer later modifies that paint – effectuated a potentially reasonable contractual expectation. *See Hansen*, 771 F. App'x at 386–87 (reversing dismissal of plaintiff's claim for breach of the implied covenant of good faith and fair dealing where the contract did not expressly state how the parties must determine the loss to plaintiff's vehicle, and plaintiff sufficiently pleaded that the industry standards and practices effectuated a potentially reasonable contractual expectation that defendant would cover the cost of

diagnostic scans).   Accordingly, Bradley's Motion to Dismiss Gunderson's third claim for relief is denied.

B.      *Bradley's Motion to Strike Gunderson's Implied Covenant Claim*

Bradley alternatively moves to strike Gunderson's third claim as redundant.   (Def.'s Mot. at 13.)   Bradley argues Gunderson's good faith and fair dealing claim is "entirely duplicative" of Gunderson's first and second claims for breach of express warranty and breach of contract.   (*Id.*) Gunderson responds that its third claim is not duplicative and supplements its breach of express warranty and breach of contract claims, as is permissible under Oregon law.   (Pl.'s Resp. at 19.) Further, Gunderson argues that it may plead its implied covenant claim in the alternative under Rule 8(d)(2) and that Bradley has not shown how it would be prejudiced by the claim.   (*Id.* at 20.) Gunderson is correct.

Gunderson may prove its third claim even if it fails to prove breach in its first or second claim.   "[A] party may violate its duty of good faith and fair dealing without also breaching the express provisions of a contract."   *Klamath Off-Project Water Users, Inc.*, 237 Or. App. at 445 (quoting *Elliott v. Tektronix, Inc.,* 102 Or. App. 388, 396, *rev. den.,* 311 Or. 13 (1990)). Moreover, Gunderson's claim for breach of the duty of good faith and fair dealing will not fail even if based on the same facts alleged to constitute a breach of the express contract.   *Foraker v. USAA Cas. Ins. Co.*, 345 F. Supp. 3d 1308, 1310 (D. Or. 2018) ("Although a breach of contract claim and a claim for a breach of the covenant of good faith and fair dealing are related, each is distinct.").   *See Morrow v. Red Shield Ins. Co.*, 212 Or. App. 653, 662 (2007) (holding that the insurer was entitled to summary judgment on the plaintiffs' breach of contract claim, but allowing a breach of the duty of good faith and fair dealing claim based on the same facts to proceed to

trial); *see also Richardson*, 161 Or. App. at 624 (breach of contract claim and breach of covenant of good faith and fair dealing claim may be based on the same facts). Further, "a claim for breach of the duty of good faith and fair dealing 'may be pursued independently of a claim for breach of the express terms of the contract.'" *Klamath Off-Project Water Users, Inc.*, 237 Or. App. at 445 (quoting *McKenzie v. Pacific Health & Life Ins. Co.,* 118 Or. App. 377, 381 (1993), *rev. dismissed,* 318 Or. 476 (1994)).

Here, Gunderson may bring a claim for breach of the duty of the implied covenant of good faith and fair dealing independent and distinct from Gunderson's first two claims. Indeed, Gunderson may prove its third claim even if it fails to prove breach in its first or second claim. *Richardson*, 161 Or. App. at 624. Moreover, as stated above, even if two claims are similar in nature, if the elements are not identical, the claims are not redundant. *Everett H. v. Dry Creek Joint Elementary School Dist.*, 5 F. Supp. 3d 1167, 1179–80 (E.D. Cal. 2014). Gunderson's breach of the implied covenant of good faith and fair dealing claim requires Gunderson to prove elements different from its first or second claim, and does not require proof of breach of the express contractual provisions; thus, it is not redundant or duplicative. *See id.* at 1180 ("An interference action, on the other hand, has a broader scope than retaliation since interference does not necessarily concern discrimination or retaliation for engaging in a protected activity.") Accordingly, Bradley's motion to strike Gunderson's third claim is denied.

////

////

////

////

*Conclusion*

Bradley's Motion to Strike and Motion to Dismiss (ECF No. 7) is DENIED.

IT IS SO ORDERED.

DATED this 30th day of March, 2020.

JOHN V. ACOSTA
United States Magistrate Judge